UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
MATTIE CONDON and JADEN LOSADA,                 :
                                                :
                           Plaintiffs,          :         **MEMORANDUM &**
                                                :         **ORDER GRANTING**
          -against-                             :         **DEFENDANTS' MOTION**
                                                :         **TO DISMISS**
TOWN OF BROOKFIELD, BROOKFIELD BOARD            :
OF EDUCATION, JAMES PURCELL, KELSEY             :         3:23-CV-00695 (VDO)
SULLIVAN, and STEVEN ROUNTOS,                   :
                                                :
                           Defendants.          :
---------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Plaintiffs Mattie Condon and Jaden Losada (collectively, "Plaintiffs") brought this action alleging multiple constitutional violations and tortious claims arising from the dissemination of their nude photographs, which were taken when they were minors, by former police officer and defendant Steven Rountos. Defendants Town of Brookfield (the "Town"), Brookfield Board of Education (the "Board"), Police Chief James Purcell, and Officer Kelsey Sullivan (collectively, "Defendants") seek dismissal of Counts Two through Five and Ten through Thirteen of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

For the reasons discussed below, Defendants' motion to dismiss is **GRANTED**.

---

[1] Plaintiffs voluntarily dismissed their claims against Brookfield Police Department, John Barile, Marc Balanda, Jules Scheithe, and Tom McMorran (*see* ECF Nos. 38 and 49); therefore, Counts Six through Nine of the Complaint are withdrawn. Defendant Rountos did not move to dismiss and instead answered the Complaint. (*See* ECF No. 37.)

I. **BACKGROUND**

    A. **Factual Background**

The Court assumes the truth of the factual allegations in the Complaint for the purposes of deciding Defendants' motion. Plaintiffs Mattie Condon and Jaden Losada graduated from Brookfield High School in 2019 and 2017, respectively. (Compl., ECF No. 1, ¶¶ 22–23.) In May 2021, Condon received a text message from a friend, who forwarded her nude images of Condon and Losada that were taken when Plaintiffs were minors and in high school. (*Id.* ¶¶ 24-28.) These images were sent to Condon's friend on the social media platform Instagram. (*Id.* ¶ 24.)

Plaintiff made a complaint about the theft and dissemination of their nude images to the Brookfield Police Department. (*Id.* ¶ 29.) In June 2021, Defendant Sullivan of the Brookfield Police interviewed Plaintiffs and told them she would talk to the "school officer" about the photos. (*Id.* ¶ 30.) This "school officer" was known to be Defendant Rountos, who was worked as the School Resource Officer at Brookfield High School while Condon was a student there. (*Id.* ¶¶ 18, 30; Pl. Opp., ECF No. 62, at 2.) Some time later, Sullivan informed Plaintiffs that Rountos did not know anything about the nude images, and, upon information and belief, did not take any further action on Plaintiffs' complaint. (Compl. ¶¶ 32-33.)

Dissatisfied with Sullivan's response, Condon sought the advice of someone at the Danbury Police Department, who told her that the matter would be passed on to the attention of the Department of Homeland Security ("DHS"). (*Id.* ¶ 36.) Plaintiffs were first contacted by a special agent from DHS in June 2021 and attended three meetings with the agent between June and December 2021. (*Id.* ¶ 37.) In these meetings, Plaintiffs provided DHS with copies of the nude images and of an Instagram account with the username "Chat_Men." (*Id.*) During

the spring and summer of 2021, this user had attempted to contact numerous individuals Plaintiffs knew from Brookfield High School and offered to trade nude pictures with them. (*Id.*)

On December 2, 2021, Plaintiffs learned that: (1) their nude images had been found on a cell phone belonging to Rountos, (2) Rountos had been terminated from his position with the Brookfield Police Department, (3) a flash drive with additional illegally obtained images had been recovered from Rountos' computer at Brookfield High School, (4) Losada's Snapchat account had been hacked and illegally accessed, and (5) a search warrant executed for the "Chat_Men" Instagram account resulted in a list of approximately 30 people, many of whom Plaintiffs knew from high school. (*Id.* ¶ 38.) Plaintiffs later discovered that on September 16, 2021, Rountos admitted that he did in fact distribute Plaintiffs' images through his cell phone. (*Id.* ¶ 39.) On or around November 18, 2022, Rountos was arrested and charged with Tampering with Physical Evidence, in violation of Conn. Gen. Stat. § 53a-115[2] for allegedly destroying the cellphone he used to disseminate Plaintiffs' images. (*Id.* ¶ 47.)

B.     **Procedural Background**

Plaintiffs filed their Complaint on May 30, 2023 and raised sixteen causes of action—(1) violation of 42 U.S.C. § 1983 against Rountos, (2) violation of 42 U.S.C. § 1983 against Sullivan, (3) violation of 42 U.S.C. § 1983 against Purcell, (4) municipal liability against the Town and Brookfield Police Department, (5) municipal liability against the Board and Town, (6) violation of 42 U.S.C. § 1983 against Superintendent Barile, (7) violation of 42 U.S.C. § 1983 against Principal Balanda, (8) violation of 42 U.S.C. § 1983 against Interim Principal

---

[2] The Court believes Plaintiffs intended to cite to Conn. Gen. Stat. § 53a-155.

Scheithe, (9) violation of 42 U.S.C. § 1983 against Interim Principal McMorran, (10) negligence against the Town, Board, Superintendent Barile, Principal Balanda, Interim Principal Scheithe, and Interim Principal McMorran, (11) negligence against Purcell, the Town, and Brookfield Police Department, (12) vicarious liability against Brookfield Police Department and the Town, (13) vicarious liability against the Board and Town, (14) invasion of privacy against Rountos, (15) intentional infliction of emotional distress against Rountos, and (16) negligent infliction of emotional distress against Rountos—and seek money, consequential, and statutory damages and attorneys' fees. (*See generally* Compl.)³ On August 14, 2023, Defendants filed their motion to dismiss. (Def. Mot., ECF No. 36.) Plaintiffs opposed on January 10, 2024 (ECF No. 62), and Defendants filed a reply on February 12, 2024. (Reply, ECF No. 69.)

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

---

³ As explained in footnote one, Counts One, Six through Nine, and Fourteen through Sixteen and any claims against the dismissed defendants are not the subject of the instant motion.

4

In deciding a motion to dismiss, the Court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014). The Court must then determine whether those allegations "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). The Court is not required to accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d. Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. **DISCUSSION**

Defendants move to dismiss Counts Two through Five and Ten through Thirteen of the Complaint under Rule 12(b)(6) for failure to state a claim. The Court grants Defendants' motion in its entirety for the reasons set forth below.

### A. Count Two: Violation of § 1983 against Officer Sullivan

Plaintiffs sue Defendant Sullivan under § 1983 in both her individual and official capacities for failure to "give equal treatment to the Plaintiffs when she failed and/or refused to investigate the Plaintiffs' claims." (Compl. ¶¶ 13, 58.) As a preliminary matter, "[b]ecause an official capacity claim against an official is tantamount to a claim against a governmental entity, when a complaint asserts a § 1983 claim against both a municipal entity and a municipal official in h[er] official capacity, the official capacity claim should be dismissed as duplicative or redundant." *Owens v. City of Milford*, No. 3:24-CV-286 (VDO), 2024 WL 2918357, at *3 (D. Conn. June 10, 2024). Since the Court dismisses Plaintiffs' § 1983 claims against the Town and Board, as discussed below, the Court dismisses Plaintiffs' § 1983 claim against Sullivan

in her official capacity and analyzes it in her individual capacity only. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (holding that, where claims against a municipality were dismissed, claim against police officers in their official capacity was also properly dismissed because it was essentially a claim against the municipality); *Baines v. Masiello*, 288 F. Supp. 2d 376, 384–85 (W.D.N.Y. 2003) (dismissing claims against municipal officers as duplicative of claims against the municipality itself).[4]

Section 1983 provides, in pertinent part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action. . . ." 42 U.S.C. § 1983; *see also Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a claim under § 1983, "two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015). An individual may be held liable under § 1983 only if she was "personally involved in the alleged deprivation" of a federal or constitutional right. *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal citation and quotation marks omitted). "Personal involvement" may be established by showing that:

> (1) [T]he defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or

---

[4] Accordingly, to the extent the parties argue that the claim against Sullivan (and Defendant Purcell in Count Three) is a *Monell* claim, "in no event does the *Monell* analysis of governmental policy or practice apply to allegations against someone acting in his or her individual capacity." *Amory v. Katz*, No. 3:15-CV-01535 (VAB), 2016 WL 7377091, at *5 (D. Conn. Dec. 19, 2016).

appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Id*.

The Court concludes that while Sullivan was acting under the color of state law when she failed to "give equal treatment to the Plaintiffs when she failed and/or refused to investigate the Plaintiffs' claims" (Compl. ¶ 58), she did not participate in or cause the deprivation of their constitutional rights. As such, Sullivan is immune from liability for money damages on this claim based on principles of qualified immunity.

### 1. Sullivan acted under the color of state law but did not deprive Plaintiffs of any constitutional right.

Generally, a public employee acts under color of state law "while acting in h[er] official capacity or while exercising h[er] responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). Section 1983 "liability may be found where [a] police officer . . . invokes the real or apparent power of the police department or performs duties prescribed generally for police officers." *Martin v. Lociccero*, 917 F. Supp. 178, 181 (W.D.N.Y. 1995). There are no facts alleged to suggest that Sullivan was doing anything other than executing her duties as a police officer when she interviewed and contacted Plaintiffs about their complaint (*see* Compl. ¶¶ 30, 32); thus, Plaintiffs have sufficiently established that Sullivan was acting under the color of state law when she "failed to investigate the Plaintiffs' claims[.]" (*Id.* ¶ 59.)

7

However, construing Plaintiffs' "equal treatment" claim as a "class-of-one" equal protection claim under the Fourteenth Amendment,[5] Plaintiffs fail to plausibly allege that Sullivan deprived them of this constitutional right. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The Equal Protection Clause mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "The equality at which the 'equal protection' clause aims is not a disembodied equality. The Fourteenth Amendment enjoins 'the equal protection of the laws,' and laws are not abstract propositions." *Griffin v. Illinois,* 351 U.S. 12, 21 (1956) (Frankfurter, J., dissenting). To succeed under a class-of-one theory, Plaintiffs must demonstrate "[1] that [they have] been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (internal citation omitted). "'[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)) (alteration in original).

---

[5] *See Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam); *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019) ("[T]he Supreme Court has . . . endorsed a class-of-one theory for equal protection claims, under which a single individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment.") (internal quotation marks and citations omitted).

Here, while Plaintiffs argue in their opposition that "they were treated differently than anyone who was similarly situated in that Plaintiffs have alleged that Officer Sullivan acted in a manner to protect her fellow officer" (Pl. Opp. at 9), nowhere in Plaintiffs' Complaint do they state as such or provide an example of a comparator who was treated differently than they were, such as to adequately plead their claim under a class-of-one theory. (*See generally* Compl.) Thus, their § 1983 equal protection claim against Sullivan is dismissed. *See Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) (affirming dismissal of § 1983 class-of-one equal protection claim because plaintiff did not specify comparators); *Chance v. Reed*, 538 F. Supp. 2d 500, 507–08 (D. Conn. 2008) (dismissing § 1983 equal protection claim because plaintiff did not produce evidence of the existence of any "similarly situated" individual).[6]

### 2. Sullivan is entitled to qualified immunity.

"A government employee sued in her individual capacity for damages arising out of her performance of discretionary functions is entitled to qualified immunity where it was objectively reasonable to believe that her acts did not violate clearly established federally

---

[6] To the extent Plaintiffs allege that Sullivan deprived them of their right to privacy (Compl ¶ 66), the Complaint lacks any indication or facts to support that Sullivan was personally involved in the deprivation of Plaintiffs' right to privacy, and therefore, the § 1983 claim against Sullivan also fails on these grounds. Additionally, to the extent Plaintiffs' claim is predicated on Sullivan's alleged failure to report Plaintiffs' complaint to the Department of Children and Families ("DCF") (*id.* ¶ 34), the Court has found no authority to suggest that such failure amounts to a violation of any constitutional right, and Defendants were not mandated to report to DCF because Plaintiffs' complaint was made when they were adults. *See Sealed v. Sealed*, 332 F.3d 51, 56 (2d Cir. 2003) (holding that Conn. Gen. Stat. § 17a-101(a) "creates no discrete rights or reasonable expectations in any specific protective measures" and therefore "does not create 'entitlements' that receive constitutional protection under the Fourteenth Amendment"), *certified question answered sub nom. Teresa T. v. Ragaglia*, 865 A.2d 428 (2005); *See v. Bridgeport Roman Catholic Diocesan Corp.*, 1997 WL 466498, at *12 (Conn. Super. Ct. July 31, 1997) ("Because the victims were eighteen or over at the time of the complaints, the reporting requirements of General Statutes § 17a-101 did not apply.").

protected rights." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). "The qualified immunity defense may be upheld as a matter of law when the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendant to believe that she was acting in a fashion that did not violate such a right." *Id.*

Here, the damages alleged as to Officer Sullivan arise directly out of her discretionary functions as a police officer. At the heart of Plaintiffs' claim is Sullivan's alleged failure to investigate Plaintiffs' claims, which, according to the Complaint, she was obligated to do under the "public duty doctrine." (Compl. ¶¶ 57–58.) It is clearly established that a police officer's duty to investigate is a discretionary function. *Kafafian v. Young*, 477 F. App'x 762, 763 (2d Cir. 2012) ("The hallmark of a discretionary act is that it requires the exercise of judgment. The extent to which a police officer investigates a complainant's allegations before applying for an arrest warrant is a matter of discretion.") (internal citation and quotation marks omitted). Thus, the first prong of the qualified immunity test is established here. *See Amory*, 2016 WL 7377091, at *5.

Furthermore, as discussed above, Plaintiffs have failed to specify any "clearly established rights" that were violated by Sullivan's conduct. In a conclusory fashion, the Complaint alleges that Sullivan's failure to investigate violated "their rights to equal treatment" (Compl. ¶ 61); however, Plaintiffs never specifically allege which constitutional right were violated by Sullivan's actions, nor do they provide any examples of similarly situated comparators to establish an equal protection claim. In the absence of factual allegations suggesting that Sullivan violated "clearly established federally protected rights"

10

and as Plaintiffs are seeking only monetary damages (Compl. at 25 (Prayer for Relief)), Sullivan's qualified immunity defense stands and Plaintiffs' § 1983 claim against her must fail. *See Gottlieb*, 84 F.3d at 518.

### B.     Count Three: Violation of § 1983 against Chief Purcell

Plaintiffs' § 1983 against Defendant Purcell in his individual capacity[7] rests on the theory that he was deliberately indifferent to "Plaintiffs' circumstances whe[n] he failed to properly train and supervise Rountos and Sullivan despite his knowledge of the need to do so." (Compl. ¶ 68.) They also claim that "[u]pon information and belief, Chief Purcell became aware that Officer Rountos had obtained, stored and/or illegally distributed nude pictures of the Plaintiffs and others and failed to report the sexual exploitation of Plaintiffs to the Department of Children and Families or to report the illegal conduct to any other authority." (*Id.* ¶ 35). These allegations lack merit.

"Supervisory liability is a concept distinct from municipal liability, and is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Rogoz v. City of Hartford*, 2012 WL 4372189, at *8 (D. Conn. Sept. 24, 2012) (internal quotation marks omitted). "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, "[i]t is not enough to show that a defendant ultimately supervised those who

---

[7] Although Plaintiffs do not state whether they are suing Purcell in his official or individual capacity in the Complaint, they clarify that this is an individual capacity claim in their opposition to Defendants' motion to dismiss. (*See* Pl. Opp. at 8 n.2.)

allegedly violated plaintiff's [c]onstitutional rights." *Id.* at 543 (internal quotation marks omitted). Instead, "[t]o establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's *personal involvement* in the alleged constitutional violations." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (emphasis added).

> [A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury.

*Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Here, Plaintiffs do not allege that they informed Purcell of their complaint or of Rountos' or Sullivan's actions, or that there is an affirmative causal link between Purcell's inaction and their alleged injuries. Their sole allegation based "upon information and belief" is that Purcell "became aware" of Rountos' wrongdoings and failed to report it to DCF (Compl. ¶ 35), but this claim fails to indicate at what point in time—whether at the time the "unconstitutional acts were occurring" or after the fact—Purcell allegedly became aware of Rountos' conduct. As pled, this claim is insufficient to survive Defendants' motion to dismiss. *See Evergreen E. Coop. v. Whole Foods Mkt., Inc.*, No. 21-2827-CV, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023) ("[A] plaintiff cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.") (internal citation and quotation marks omitted); *Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026 (CJS), 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020) ("A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements "upon information and belief" without explaining the basis for the belief."), *aff'd*, 995 F.3d 315 (2d Cir. 2021).

12

Moreover, Plaintiffs assume, without more, that had Purcell properly trained and supervised Rountos and Sullivan, they would not have been harmed. Without any facts to support that Purcell was deliberately indifferent towards Plaintiffs because of his lack of training and supervision of Rountos and Sullivan, the Court is inclined to believe that Plaintiffs have named Purcell only for his supervisory role as police chief. Given § 1983's requirement of personal involvement, and Plaintiffs' failure to allege such involvement, the § 1983 claim brought against Purcell in his individual capacity is dismissed. *See Nunez v. Goord*, 172 F. Supp. 2d 417, 434 (S.D.N.Y. 2001).[8]

### C.    Counts Four and Five: Municipal Liability against the Town and Board

Under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978), a municipality may be liable for the acts of its employees or agent only if the harm inflicted was in the execution of its policy, practice, or custom. There is no vicarious liability for local governments solely on the basis of an employer-employee relationship. *Id.* at 692. To bring a successful claim against a municipality, then, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The first element may be satisfied by showing that an injury resulted from one of four categories:

> (1) formal policy which is officially endorsed by the municipality, (*see Monell*, 436 U.S. at 690, 98 S.Ct. 2018); (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights, (*see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1299-1300, 89 L.Ed.2d 452); (3) a practice so persistent and widespread that it constitutes a "custom or

---

[8] For the reasons stated in Section II.A(2), *supra*, the Court also finds that Purcell is entitled to qualified immunity on the claim.

13

> usage" and implies the constructive knowledge of policy-making officials, (*see Monell*, 436 U.S. at 690-91, 98 S.Ct. 2018); or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact" (*see City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)).

*Gerte v. Borough of Naugatuck*, No. 3:19-CV-1511 (JBA), 2021 WL 1165362, at *6 (D. Conn. Mar. 26, 2021) (quoting *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 293-94 (S.D.N.Y. 2005)). Second, the plaintiff must establish a causal connection or "affirmative link" between the official policy and the alleged civil rights violation. *See Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985); *Roe*, 542 F.3d at 36.

Plaintiffs maintain in Count Four of the Complaint that "[t]he customs, policies, usages, practices, procedures and rules of the Defendant Town . . . constituted a deliberate indifference to the constitutional rights of the Plaintiffs" and Defendants "deprived Plaintiffs of federally protected rights including . . . the right (a) [t]o be free of unreasonable searches and seizures; (b) [t]o receive equal treatment under the law; (c) [t]o privacy and equal protection; and (d) [t]o be afforded the protections of Title IX[.]" (Compl. ¶¶ 72, 76.) In Count Five, they claim that (1) the Board and Town "failed to train, regulate and supervise Rountos," (2) "[t]he customs, policies, usages, practices, procedures, and rules of the Defendant Town . . . and the Board . . . constituted a deliberate indifference to the constitutional rights of the Plaintiffs," and (3) "Defendants deprived Plaintiffs of federally protected rights[.]" (*Id.* ¶¶ 82, 85, 88.)

Plaintiffs' allegations of municipal liability are conclusory in that the Complaint is devoid of any particularized facts from which the Court could conclude that a reasonable jury could reach the conclusion asserted as required to overcome a motion to dismiss. Plaintiffs have alleged no facts—specific or otherwise—which support an inference of deliberate

indifference to the rights of citizens through a failure to train or a failure to supervise. *See Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (holding that to establish a claim of inadequate training or supervision amounting to deliberate indifference, Plaintiffs must show that (1) "a policymaker of the municipality knows to a moral certainty that [its] employees will confront a given situation"; (2) that the "situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.") (internal citations omitted). Absent evidence of a pattern of similar violations to provide "notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Indeed, Plaintiffs allege only vaguely that certain policies, practices, rules, or customs exist—giving rise to an inference of deliberate indifference—but fail to plead any facts in support of their actual existence. No specific rules, policies, practices, or customs are alleged, nor is a pattern of similar violations. Plaintiffs also do not proffer any facts to establish that the Town and/or Board were the direct or proximate cause of the alleged violations of Plaintiffs' constitutional rights. In addition, they do not contend that an official with *final* policy-making authority took action that caused the deprivation. As such, Plaintiffs' allegations are entirely conclusory and unsubstantiated and do not permit an inference of deliberate indifference. *See Beckford v. City of New Haven*, No. 3:11-CV-498 (VLB), 2011 WL 6153182, at *6 (D. Conn. Dec. 12, 2011) (dismissing Plaintiff's failure to train claim where Plaintiff failed to raise specific facts to demonstrate that City had actual or constructive notice of systematic excessive

15

force violations); *Santos v. New York City,* 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (motion to dismiss granted "[b]ecause the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff").

In sum, Plaintiffs have pled no facts to allow the Court to infer the existence of any policy, practice, or custom that would give rise to a *Monell* claim, especially since they allege only one incident causing the deprivation of their constitutional rights. *See Harper v. City of New York*, 424 F. App'x 36, 38–39 (2d Cir. 2011) (finding that the plaintiff had failed to state a *Monell* claim where he did not state sufficient facts to allege the existence of a custom or practice); *Doe v. Enfield Bd. of Educ.*, No. 3:17-CV-1894 (JCH), 2018 WL 2725452, at *11 (D. Conn. June 6, 2018) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.") (internal citations and quotation marks omitted). As the Complaint tenders only "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted), Plaintiffs' *Monell* claims must fail.

Accordingly, the Court dismisses Plaintiffs' § 1983 claims in Counts Four and Five as to the Town and Board.

### D. Counts Ten and Eleven: Negligence against the Town, Board, and Purcell

In Counts Ten and Eleven, Plaintiffs allege that the Town, Board, and Purcell breached their duties to Plaintiffs by failing to supervise Rountos, "failing to know" he was sexually harassing students, and failing to investigate and report him to the appropriate authorities pursuant to Conn. Gen. Stat. § 17a-101 and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*. (Compl. ¶¶ 115, 120). They further contend that Purcell and

the Town were negligent because they breached their duties of care to Plaintiffs and, in doing so, proximately caused their injuries. (*Id.*) Defendants argue that Plaintiffs' negligence claims should be dismissed pursuant to Conn. Gen. Stat. § 52-557n(a)(2) because they do not sufficiently allege that the Town, Board, and/or Purcell caused or could be liable for Rountos' conduct. The Court agrees with Defendants.

### 1. Defendants did not breach a ministerial duty.

Conn. Gen. Stat. § 52–557n authorizes claims in negligence where the municipality has breached a ministerial, but not a discretionary, duty. *Tice v. Southington Bd. of Educ.*, 94 F. Supp. 2d 242, 245 (D. Conn. 2000). Additionally, section 52–557n provides that a municipality may be liable for damages caused by the negligent act or omission of an employee acting within the scope of employment *except* (1) where the act or omission required the employee's exercise of discretion "as an official function of the authority expressly or impliedly granted by law" or (2) where the act or omission "constitute[s] criminal conduct, fraud, actual malice or willful misconduct." Conn. Gen. Stat. § 52-557n(a)(2).

Governmental acts performed wholly for the direct benefit of the public that are supervisory are discretionary, while acts performed in a prescribed manner without the exercise of judgment or discretion are ministerial. *Elliott v. Waterbury*, 715 A.2d 27, 40 (Conn. 1998). Connecticut precedent demonstrates that acts or omissions concerning the supervision, control, and discipline of employees are discretionary acts as a matter of law. *Hughes v. City of Hartford*, 96 F. Supp. 2d 114, 118 (D. Conn. 2000). Although Plaintiffs argue that the Town, Board, and Purcell breached their ministerial duty to report Plaintiffs' complaint to DCF, as noted in footnote six, *supra*, Defendants were not obligated do so. Plaintiffs' negligence claims against the Town, Board, and Purcell implicate discretionary acts relative to employee

supervision, control, and discipline and pertain to Rountos' criminal conduct and so fall under the exceptions to liability found in section 52–557n(a)(2).

### 2. Plaintiffs were not subject to imminent harm to invoke the exception to governmental immunity.

Even if Defendants' acts were discretionary, Plaintiffs argue, liability may still attach to them "when the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm." *Hughes*, 96 F. Supp. 2d at 120 (internal quotation marks omitted). (Pl. Opp. at 18.) "'The discrete person/imminent harm exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state.'" *Doe v. Mastoloni*, No. 3:14-CV-00718 (CSH), 2016 WL 593439, at *21 (D. Conn. Feb. 12, 2016) (quoting *Evon v. Andrews*, 559 A.2d 1131, 1134 (Conn. 1989)). When relying upon the "identifiable individual to imminent harm" exception to governmental immunity, "the plaintiff must demonstrate that she was an identifiable person *and* was subject to imminent harm *and* that a public officer's conduct subjected her to that harm, despite the apparent likelihood of harm to her." *Doe v. Peterson*, 903 A.2d 191, 200 (Conn. 2006). "All three must be proven in order for the exception to apply." *Haynes v. City of Middletown*, 101 A.3d 249, 255 (Conn. 2014) (internal quotation marks omitted).

Plaintiffs allege that they, "as known members of the High School class, were identifiable persons who were foreseeably at risk of imminent harm." (Compl. ¶¶ 117, 122.) Plaintiffs argue that the risk of harm was "foreseeable" as a result of the defendants' failure to supervise and monitor Rountos, but this allegation is insufficient to trigger the identifiable person-imminent harm exception. "Imminent does not simply mean a foreseeable event at

some unspecified point in the not too distant future. Rather . . . plaintiffs [must] identify a discrete place and time period at which the harm will occur." *Mastoloni*, 2016 WL 593439, at *21 (internal citation and quotation marks omitted). The Complaint, however, does not demonstrate that the Town, Board, and/or Purcell were aware of a definite point in time at which Rountos was going to "exploit" Plaintiffs and "seize" their electronic data. (Compl. ¶ 115.) The Complaint therefore fails to state that an imminent harm was apparent to Defendants, and the Court need not address whether Plaintiffs satisfied the remaining two elements of the "identifiable individual to imminent harm" exception.

Consequently, the Court grants Defendants' motion to dismiss as to Counts Ten and Eleven.

    **E.**    **Counts Twelve and Thirteen: Vicarious Liability against the Town and Board**

As the Court stated in Section II.C above, there is no vicarious liability for municipalities solely based on a theory of respondeat superior. *Monell*, 436 U.S. at 691. A municipality may only be sued directly if a plaintiff alleges that a "municipal policy of some nature caused a constitutional tort." *Id.* In other words, a municipality may not be found liable simply because one of its employees or agents committed a tort. *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown,* 520 U.S. 397, 405 (1997). The Court has already concluded that Plaintiffs failed to demonstrate that any policies, practices, rules, or customs of the Town or Board existed, let alone caused Plaintiffs harm. Accordingly, Counts Twelve and Thirteen of the Complaint are dismissed.

**F.     Leave to Amend**

Plaintiffs request an opportunity to amend their Complaint. (Pl. Opp. at 19.) "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)). There is nothing in the Complaint to suggest that Plaintiffs may overcome the qualified and governmental immunity defenses or other substantive bars to their claims. Therefore, as amendment would be futile because it cannot cure the deficiencies in the Complaint, Plaintiffs' request to amend the Complaint is denied.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 36) is **GRANTED.** Counts Two through Five and Ten through Thirteen of the Complaint are **dismissed with prejudice**. The Clerk is directed to terminate Sullivan, Purcell, the Town of Brookfield, and the Brookfield Board of Education as defendants in this action.

**SO ORDERED.**

Hartford, Connecticut
August 20, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge